UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
BAPTIST MEMORIAL HOSPITAL,          )
                                    )
            Plaintiff,              )
                                    )
    v.                              )   Civil Action No. 02-1919 (PLF)
                                    )
CHARLES E. JOHNSON,                 )
  Acting Secretary, United States Department of )
  Health and Human Services,        )
                                    )
            Defendant.¹             )
_____)

OPINION

Plaintiff hospital brings suit for declaratory and injunctive relief in the nature of mandamus, asking the Court to compel defendant, the Secretary of Health and Human Services, through the Centers for Medicare and Medicaid Services ("CMS") to reopen a final payment decision issued by the Secretary's payment agent and to recalculate the Secretary's reimbursement of plaintiff for services it rendered to indigent clients.² Three motions are currently before the Court for consideration — defendant's motion to dismiss for lack of jurisdiction, plaintiff's motion for discovery, and plaintiff's motion for summary judgment.³

---

¹ The Court has substituted Acting Secretary Charles E. Johnson as defendant pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

² CMS is the component of the Department of Health and Human Services that is responsible for administering the Medicare program. It was formerly known as the Health Care Financing Administration ("HCFA").

³ The Court has considered the following papers: the Amended Complaint ("Am. Compl."); Plaintiff's Motion for Discovery ("Mot. for Disco."); Defendant's Consolidated Motion in Opposition to Plaintiff's Motion to Modify Case Management Order and Plaintiff's

After careful consideration of the parties' papers and the entire record in the case, the Court will deny plaintiff's motion for discovery, will grant defendant's motion to dismiss and, as a result, finds that plaintiff's motion for summary judgment is moot. The case will be dismissed.

I.  BACKGROUND

This case is related to an issue that has been litigated before this Court and resolved by the United States Court of Appeals for the District of Columbia Circuit in <u>Monmouth Med. Ctr. v. Thompson</u>, 257 F. 3d 807 (D.C. Cir. 2001), and <u>In re Medicare Reimbursement Litig.</u>, 414 F.3d 7 (D.C. Cir. 2005), <u>cert</u>. <u>denied</u>, 547 U.S. 1054 (2006). The history of this litigation is described, in brief, below.

The Medicare Act, Title XVIII of the Social Security Act, 42 U.S.C. § 1395 <u>et seq.</u>, creates a federally funded health insurance program for the elderly and disabled. Part A of the Medicare Act reimburses hospitals for the operating costs of certain inpatient services. <u>See</u> 42 U.S.C. § 1395ww. In order to obtain this reimbursement, eligible hospitals file cost reports with their "fiscal intermediaries," <u>see</u> 42 C.F.R. § 413.20, usually insurance companies serving as the Secretary's agents for the purpose of reimbursing health care providers. <u>See</u> 42 C.F.R. § 421.3; <u>In re Medicare Reimbursement Litigation</u>, 414 F.3d at 8. The intermediaries audit the hospitals' cost reports and then issue Notice of Program Reimbursements ("NPRs") in which they determine the amount owed by the Secretary to the hospitals for the fiscal year at issue. <u>See</u>

---

Motion for Discovery; Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion to Modify Case Management Order and Plaintiff's Motion for Discovery; Defendant's Motion to Dismiss; Plaintiff's Combined Motion for Summary Judgment and Opposition to Dismissal ("Opp. to Mot. to Dismiss"); Defendant's Reply in Support of Motion to Dismiss and Opposition to Plaintiff's Motion for Summary Judgment; and Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment.

42 C.F.R. § 405.1803(a). Hospitals may appeal the NPR to the Provider Reimbursement Review Board (the "PRRB") within 180 days. See 42 U.S.C. § 1395oo(a). The PRRB may reverse, affirm or modify the intermediary's decision; subsequently, the Secretary may similarly reverse affirm or modify the PRRB's decision. See 42 U.S.C. §§ 1395oo(d), (f)(1). Hospitals still dissatisfied with the final decision may seek judicial review by filing suit in the appropriate United States District Court. See 42 U.S.C .§ 1395oo(f); In re Medicare Reimbursement Litig., 414 F.3d at 8.

Reimbursement to hospitals varies based on hospital-specific factors, see 42 U.S.C. § 1395ww(d)(5); those hospitals that serve a "significantly disproportionate number of low-income patients" receive increased reimbursements known as "disproportionate share" ("DSH") adjustments. 42 U.S.C. § 1395ww(d)(5)(F)(i)(I). Congress enacted legislation that established detailed criteria for determining hospital eligibility and the extent of any DSH adjustment. See 42 U.S.C. § 1395ww(d)(5)(F); In re Medicare Reimbursement Litig., 414 F.3d at 9. The HCFA promulgated interpretive regulations to implement these provisions — regulations that four circuits subsequently found to be inconsistent with the Medicare Act because they improperly restricted DSH eligibility and reduced payments to eligible hospitals. See Cabell Hunting Hosp. Inc. v. Shalala, 101 F.3d 984 (4th Cir. 1996); Legacy Emanuel Hosp. & Health Ctr. v. Shalala, 97 F.3d 1261 (9th Cir. 1996); Deaconess Health Servs. Corp. v. Shalala, 83 F.3d 1041 (8th Cir. 1996) (per curiam); Jewish Hosp., Inc. v. Sec'y of Health and Human Servs., 19 F.3d 270 (6th Cir. 1994).

In light of these decisions, the Administrator of HCFA issued a ruling that rescinded the challenged regulation nationwide, announcing a new interpretation more favorable

to hospitals. See Health Care Financing Administration Ruling 97-2 (February 27, 1997) ("HCFAR 97-2"); see also In re Medicare Reimbursement Litigation, 414 F.3d at 9. In Monmouth Med. Ctr. v. Thompson, 257 F. 3d at 813-15, the court of appeals addressed the reach of HCFAR 97-2 in conjunction with 42 C.F.R. § 405.1885(b) (1997), which required an NPR to be reopened and revised if, within three years, the HCFA provided notice to the intermediary that the decision was "inconsistent with the applicable law." Id. at 813.[4] The court held that because HCFAR 97-2 constitutes "notice" under 42 C.F.R. § 405.1885(b) (1997), that regulation imposed a clear duty on intermediaries, enforceable through mandamus, to reopen NPRs issued for the three years prior to the Secretary's issuance of HCFAR 97-2. Id. at 814. The court found that even though HCFAR 97-2 stated that it only had prospective effect, the mandatory language of 42 C.F.R. § 405.1885(b) (1997) created a nondiscretionary duty to reopen NPRs decided under the rescinded regulation within the three years prior to its issuance. Id. at 813-15. The D.C. Circuit subsequently ruled in In re Medicare Reimbursement Litig., 414 F.3d at 11, that this duty to reopen applied to NPRs issued in the three years prior to the issuance of HCFAR 97-2, even if the hospitals had not previously applied for reopening, because it would have been futile for the hospitals to have timely sought reopening in view of the Secretary's original ruling that HCFAR 97-2 only applied prospectively.

    Plaintiff Baptist Memorial Hospital now seeks, through mandamus, an order directing the Secretary to reopen and correct the NPR ruling on its fiscal year 1991 cost report.

---

   [4]  The parties both rely on the version of the reopening regulation, 42 C.F.R. § 405.1885, that was in effect as of February 27, 1997, even though the regulation has since been amended for clarification. The Court will do the same. See In re Medicare Reimbursement Litig., 309 F. Supp. 2d 89, 97 n. 6 (declining to apply current version of regulation).

When plaintiff filed this report, prior to the issuance of HCFAR 97-2, it relied on the now rescinded regulation to compute its DSH eligibility.  See Am. Compl. ¶ 29.  Upon auditing plaintiff's cost report, the intermediary determined that plaintiff was not eligible for the DSH Adjustment, a determination that plaintiff alleges is incorrect.  See Am. Compl. ¶¶ 30-31.  Plaintiff says that it appealed the intermediary's DSH computation, including the Secretary's method of calculating DSH eligibility and reimbursement, to the PRRB on March 23, 1994.  See Am. Compl. ¶ 32.  Plaintiff further alleges that the appeal was properly pending before the PRRB when HCFAR 97-2 was issued, on February 27, 1997.  See Am. Compl. ¶ 33.  Plaintiff makes no further allegations regarding its pursuit of its appeal or any efforts to obtain other relief.

## II.  DISCUSSION

### A.  Standard for Relief in the Nature of Mandamus

Disposition of the parties' motions rests on whether mandamus relief is available to plaintiff.  Section 1361 of Title 28 provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  The remedy of mandamus "is a drastic one, to be invoked only in extraordinary circumstances." Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 34 (1980).  Mandamus is available only if: "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff."  In re Medicare Reimbursement Litig., 414 F.3d at 10 (quoting Power v. Barnhart, 292 F.3d 781, 784 (D.C. Cir. 2002)). The party seeking mandamus "has the burden of showing that 'its right to issuance of the writ is clear and

indisputable.'" Northern States Power Co. v. U.S. Dep't of Energy, 128 F.3d 754, 758 (D.C. Cir. 1997) (quoting Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 289 (1988)).[5]

*B. Plaintiff's Motion for Discovery*

Plaintiff moves for limited discovery related to the Court's mandamus jurisdiction. In certain circumstances, plaintiffs should "be given an opportunity for discovery of facts necessary to establish jurisdiction prior to decision of a 12(b)(1) motion." Ignatiev v. United States, 238 F.3d 464, 467 (D.C. Cir. 2001). Where additional discovery would not "be beneficial to [plaintiff's] establishment of jurisdiction," discovery need not be granted prior to dismissal on jurisdictional grounds. Cheyenne-Arapaho Tribes v. United States, 517 F. Supp. 2d 365, 373 (D.D.C. 2007) (citations omitted), aff'd No. 07-5399, 2009 U.S. App. LEXIS 5445 (D.C. Cir. March 17, 2009). "When requesting jurisdictional discovery, however, a plaintiff must make a 'detailed showing of what discovery it wishes to conduct or what results it thinks such discovery would produce.'" Medical Solutions v. C Change Surgical LLC, 468 F. Supp. 2d 130, 135 (D.D.C. 2006) (citing United States v. Philip Morris Inc., 116 F. Supp. 2d at 130 n.16). "Where there is no showing of how jurisdictional discovery would help plaintiff discover anything new, 'it [is] inappropriate to subject [defendant] to the burden and expense of discovery.'" Medical Solutions v. C Change Surgical LLC, 468 F. Supp. 2d at 135 (citing Comsat Corp. v. Finshipyards S.A.M., 900 F. Supp. 515, 524 n.4 (D.D.C. 1995)); see also

---

[5] A plaintiff who makes a showing of these three legal elements still will only be awarded relief in mandamus if it is equitable to provide relief. See In re Medicare Reimbursement Litig., 414 F.3d at 10 (citing 13th Regional Corp. v. U.S. Dep't of Interior, 654 F.2d 758, 760 (D.C. Cir. 1980) (relief may be provided only when there exist "compelling . . . equitable grounds")).

Cheyenne Arapaho Tribes v. United States, 2009 U.S. App. LEXIS 5445 at *11 ("conclusory assertions about the potential value of discovery are insufficient unless supported by specific discoverable facts").

Plaintiff has made no such detailed showing, and the Court is not persuaded that factual discovery would make any difference in its determination that it does not have mandamus jurisdiction over plaintiff's claims.  Plaintiff's motion is not very precise as to what discovery it actually seeks, but does state:

> Specifically, the Plaintiff here seeks facts related to whether the Defendant's and the Board's precedent, procedures, program memoranda, rulings and instructions to its fiscal intermediary resulted (in concert with 42 C.F.R. § 405.1885(b) (1997)) in a non-discretionary duty to reopen; whether the Defendant issued any additional instructions (aside from HCFA Ruling 97-2 and those found at Exhibits 1 and 2) that would have triggered the reopening requirement of 42 C.F.R. § 405.1885(b)(1997); whether and how those instructions were implemented; whether those instructions were repealed or countermanded; and/or whether — under the Board's precedent at the time the Provider's appeal was dismissed — the Provider's appeal was futile.

Mot. for Disco., Memorandum of Points and Authority in Support at 8-9.  As explained below, plaintiff cannot show that defendant had any nondiscretionary duty to reopen its NPR for fiscal year 1991 based on HCFAR 97-2.  Plaintiff has not articulated how any of the discovery it requests would change this conclusion, other than its suggestion that it might possibly find an additional instruction or ruling by the Secretary that expanded the effect of HCFAR 97-2.  See FC Inv. Group v. IFX Markets, 529 F.3d 1087, 1094 ("The district court does not abuse its discretion when it denies a discovery request that would amount to nothing more than a fishing expedition.") (citations omitted).  Nor has plaintiff shown that additional discovery would alter

the Court's conclusion that the Sixth Circuit Program Policy Memorandum does not provide mandamus jurisdiction because, as the Court concludes in Part D infra, alternate, non-futile, remedies were available to plaintiff. Plaintiff has articulated no basis to believe that discovery would yield some evidence to show that its remedies were, in fact, futile. The motion for discovery will be denied.

### C. Application of HCFAR 97-2 to Plaintiff's NPR

The courts in Monmouth and In re Medicare Reimbursement Litigation found that defendant had a nondiscretionary duty to reopen certain hospitals' NPRs because the agency's reopening regulation required reopening if the notice of inconsistency occurs "within the three year period" after the date of the determination or decision. 42 C.F.R. § 405.1885(b) (1997); see also Monmouth Med. Ctr. v. Thompson, 257 F. 3d at 814; In re Medicare Reimbursement Litig., 414 F.3d at 10. Plaintiffs in those cases contested NPRs that were all issued in the three years immediately prior to the issuance of HFCAR 97-2 on February 27, 1997. In contrast, plaintiff's NPR for fiscal year 1991 was issued on September 28, 1993. See Am. Compl. ¶ 31. Because the date of plaintiff's payment decision was more than three years before the notice of inconsistency in the law announced in HCFAR 97-2, nothing in 42 C.F.R. § 405.1885(b) (1997), or any other applicable law or regulation, imposed a duty on defendant or its agents, the intermediaries, to reopen plaintiff's NPR. Indeed, to find that defendant had such a duty to act would suggest that defendant is obliged to reopen every payment decision made prior to the issuance of HCFAR 97-2 and pursuant to the now invalid regulation, no matter how old those decisions are. Because plaintiff's NPR was issued outside the three year window, plaintiff cannot show that it has a clear

right to relief or that defendant had a nondiscretionary duty to act. This Court therefore lacks mandamus jurisdiction. See Northern States Power Co. v. U.S. Dep't of Energy, 128 F.3d at 758.

Plaintiff also relies on the "appeal provision" in HCFAR 97-2 as the basis for finding that the Secretary had a nondiscretionary duty to reopen plaintiff's NPR. The relevant paragraph reads:

> We will not reopen settled cost reports based on this issue. For hospital cost reports that are settled by fiscal intermediaries on or after the effective date of this ruling, these days may be included. For hospital cost reports which have been settled prior to the effective date of this ruling, these days may be included. For hospital cost reports which have been settled prior to the effective date of this ruling, *but for which the hospital has a jurisdictionally proper appeal pending on this issue* pursuant to either 42 C.F.R. § 405.1811 or 42 C.F.R. § 405.1835, *these days may be included for purposes of resolving the appeal.*

See HCFAR 97-2 at 2 (emphasis added). Plaintiff has alleged that it had a "jurisdictionally proper appeal" pending before the Review Board at the time that HCFAR 97-2 was issued. See Am. Compl. ¶ 32.

In contrast to the decision in Monmouth that HCFAR 97-2 triggered a mandatory duty to act under 42 C.F.R. § 405.1885(b) (1997) by treating then current DSH regulations as inconsistent with the Medicare statute, see Monmouth Med. Ctr. v. Thompson, 257 F. 3d at 814, the "appeal provision" in HCFAR 97-2 did not create any similar duty with regard to then pending appeals. Plaintiff's arguments to the contrary are foreclosed by the use of the word "may" in HCFAR 97-2 rather than "shall" or "must." While the above paragraph plainly *permitted* the Secretary and the Review Board to rely on HCFAR 97-2's policy change when

9

settling appeals pending at the time HCFAR 97-2 was issued, it does not require them to do so. See In re Medicare Reimbursement Litig., 309 F. Supp. 2d 89, 96-97 (D.D.C. 2004) (contrasting discretionary reopening pursuant to regulatory use of the word "may" with mandatory reopening pursuant to use of the word "shall"), aff'd 414 F.3d 7 (D.C. Cir. 2005); see also Your Home Visiting Nurse Servs. v. Shalala, 525 U.S. 449, 456-57 (1999) ("The reopening regulations do not require reopening, but merely permit it: 'A determination of an intermediary . . . may be reopened . . . by such intermediary . . . on the motion of the provider affected by such determination.") (quoting 42 C.F.R. § 405.1885(a) (1997)). Without proof of a clear nondiscretionary duty on defendant's part, the Court has no mandamus jurisdiction. See Northern States Power Co. v. U.S. Dep't of Energy, 128 F.3d at 758.[6]

### D. Application of Sixth Circuit Program Policy Memorandum to Plaintiff's NPR

Plaintiff raises another theory for relief for the first time in its opposition to defendant's motion to dismiss — a theory based on a Program Policy Memorandum issued by the HCFA to the HCFA Regional Center in Chicago on October 20, 1994. See Opp. to Mot. to Dismiss at 20-25. The Program Policy Memorandum was issued following the decision by the Sixth Circuit in Jewish Hospital Inc. v. Secretary of Health and Human Services, 19 F.3d 270

---

[6] Plaintiff argues that there is support for mandamus jurisdiction in defendant's assumption in the briefing that plaintiff's appeal pending before the PRRB when HCFAR 97-2 was issued would have been successful. See Opp. to Mot. to Dismiss at 35. Plaintiff is incorrect because mandamus requires the existence of a clear duty on the government actor's part, not merely a strong likelihood that the government actor will act the way the plaintiff desires. See Northern States Power Co. v. U.S. Dep't of Energy, 128 F.3d at 758; see also Heckler v. Ringer, 466 U.S. 602, 616, (1984) ("The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff . . . only if the defendant owes him a clear nondiscretionary duty.") (citations omitted); Weber v. United States, 209 F.3d 756, 759 (D.C. Cir. 2000) ("mandamus is proper only when an agency has a clearly established duty to act").

(6th Cir. 1994), the earliest of the appellate decisions holding that the then existing regulations were inconsistent with the Medicare statute in their treatment of disproportionate share hospitals. See Opp. to Mot. to Dismiss, Ex. 7 at 1. The Program Policy Memorandum instructed the Regional Center to contact fiscal intermediaries for hospitals located within the Sixth Circuit (as was plaintiff's hospital, see Am. Compl. ¶ 4) to notify them that in the future DSH hospital calculations should be made using the "court's methodology." See Opp. to Mot. to Dismiss, Ex. 7 at 1. The intermediaries were also instructed to use the "court's methodology" for those cost years when an NPR had been issued "and there is a jurisdictionally proper appeal." Id. at 2. Plaintiff contends that this Program Policy Memorandum functioned in the same manner as HCFAR 97-2 — namely, to instruct the intermediaries that the current regulations regarding calculation of DSH reimbursement were contrary to law, and thus triggered mandatory reopening, pursuant to 42 C.F.R. § 405.1885(b) (1997).

       Plaintiff did not assert this basis for relief in its amended complaint, which identifies a right to relief only under the HCFAR 97-2. While plaintiff's theory as to the basis for relief is similar for the Sixth Circuit Program Policy Memorandum as for HCFAR 97 — that both documents' notice of policy change triggered the mandatory reopening provision under 42 C.F.R. § 405.1885(b) (1997) — the factual predicate is different. Introducing this basis for relief at this point in this litigation is procedurally improper. See, e.g., McManus v. District of Columbia, 530 F. Supp. 2d 46, 74 n. 25 (D.D.C. 2007) ("it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss") (citations omitted). In the interest of judicial efficiency, however, and because it finds that this theory of relief does not provide a basis for relief in mandamus, the Court will address plaintiff's arguments as to the

Sixth Circuit Program Policy Memorandum.

Even assuming that plaintiff's analysis showed that it had a right to relief and that the defendant had a clear duty to act, plaintiff cannot satisfy the third prong for mandamus jurisdiction that no other adequate remedy is available.  See Northern States Power Co. v. U.S. Dep't of Energy, 128 F.3d at 758.  When the Sixth Circuit Program Policy Memorandum was issued, plaintiff had an appeal pending before the PRRB, through which plaintiff could have raised either the result in Jewish Hospital or the instructions in the Policy Memorandum.  Plaintiff does not allege that it pursued this issue on appeal before the PRRB (or indeed that it pursued any aspect of the appeal), or that it made any effort to pursue subsequent judicial review under 42 U.S.C .§ 1395oo(f), or that it subsequently sought reopening of its NPR.  Nor has plaintiff offered any compelling reason for its failure to pursue these avenues of relief earlier.  In a mandamus action, of course, the burden is on the plaintiff to show that it has met all three elements.  See Northern States Power Co. v. U.S. Dep't of Energy, 128 F.3d at 758 ("The party seeking mandamus has the burden of showing that 'its right to issuance of the writ is clear and indisputable.'") (citing Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. at 289).

In Monmouth, by contrast, the hospitals' failure to file proper appeals of their NPRs did not preclude their right to mandamus relief because then existing DSH regulations made their appeals futile.  See Monmouth Med. Ctr. v. Thompson, 257 F.3d at 815; see also In re Medicare Litig., 414 F.3d at 11 (mandamus not barred because an earlier motion for reopening did not "offer any chance for the hospitals to obtain relief").  For plaintiff to have timely pursued its appeal on these grounds was not similarly futile — the Jewish Hospital decision was law in the Sixth Circuit while plaintiff's appeal was pending, and plaintiff has asserted that the Sixth

12

Circuit Program Policy Memorandum instruction made it likely that plaintiff would have been successful had it raised this issue on appeal. Similarly, plaintiff could have moved to reopen the decision by the intermediary after either the Sixth Circuit issued its decision in Jewish Hospital or the Program Policy Memorandum issued. See 42 C.F.R. § 405.1885(a) (1997) ("A determination of an intermediary . . . may be reopened with respect to findings on matters at issue in such determination . . . on motion of the provider affected by such determination . . .). The Court has no mandamus jurisdiction, because plaintiff did not "do all [it could] do to vindicate [its] right to reopening." Monmouth Med. Ctr. v. Thompson, 257 F.3d at 815. See also Lutheran Med. Ctr. v. Thompson, Civil Action No. 02-6144, 2006 WL 2853870 at *6 & n. 3 (E.D.N.Y. 2006) (where plaintiff hospital failed to make full use of the PRRB review process to challenge a reimbursement order, the court did not have jurisdiction to issue a writ of mandamus); Lutheran Med. Ctr. v. Thompson, 520 F. Supp. 2d 414, 419 (E.D.N.Y. 2007) (same).

### E. Federal Question Jurisdiction

Finally, plaintiff argues in the alternative that the Court should exercise federal question jurisdiction. It is settled law in this Circuit, however, that jurisdiction under 28 U.S.C. § 1331 "could not be more plainly off limits under 42 U.S.C. § 405(h), which explicitly withholds § 1331 jurisdiction for 'any claim' arising under [the Medicare Act]." Monmouth Med. Ctr. v. Thompson, 257 F.3d at 812. Even assuming Monmouth permitted the Court to apply the narrow exception found applicable by the Tenth Circuit in Bartlett Mem. Med. Ctr. v. Thompson, 347 F.3d 828, 843 (10th Cir. 2003), plaintiff still would not be successful, because, as explained above, plaintiff has not been left in the position of having no review at all (which

was the basis for the <u>Bartlett</u> court's finding that federal question jurisdiction existed).[7] Plaintiff had a pending appeal before the PRRB, and then had the opportunity to challenge that appeal in federal court pursuant to 42 U.S.C. § 1395oo(f). The Court does not have federal question jurisdiction over plaintiff's claim.

### III.  CONCLUSION

For the foregoing reasons, the Court will deny plaintiff's motion for discovery and will grant defendant's motion to dismiss for lack of mandamus jurisdiction. The case will be dismissed. Plaintiff's motion for summary judgment therefore is moot. An Order consistent with this Opinion will issue this same day.

           /s/_____
      PAUL L. FRIEDMAN
      United States District Judge

DATE: March 25, 2009

---

[7] Contrasting Part B of Medicare, which was before the court in <u>Bartlett</u>, and Part A at issue in this case, the court in <u>Bartlett</u> noted that for a claim arising under Medicare Part A to be afforded no review at all, and thus require a finding of federal subject matter jurisdiction "is highly unlikely because of the panoply of opportunities for review that Part A provides to claimants." <u>Bartlett Mem. Med. Ctr. v. Thompson</u>, 347 F.3d at 843.